Davis, J.
The several defendants in error are claiming a preference in the application of the fund arising from the sale of the Ohio Southern Railroad under a decree of foreclosure. The plaintiffs in error are the purchasers of the railroad on behalf of the holders of the first mortgage bonds and the Central Trust Company of New York. The fund is insufficient to pay the amount of the outstanding first mortgage bonds, with the interest, and the defendants in error insist that mechanics’ liens for materials and labor furnished by them respectively, in the construction of the Jeffersonville branch of the Ohio Southern Railroad are prior to the lien of the holders of the first mortgage bonds. The circuit court so held. 19 C. C., 436."
On May 23, 1881, the Ohio Southern Railroad Company made a mortgage or trust deed to the Central Trust Company to secure four million dollars of bonds. It was provided that 1920 bonds of $1,000 each should be issued immediately, and the remainder at the rate of $15,000 a mile for each and every mile of completed railroad, branch, extension or addition in excess of one hundred and twenty-nine miles, or when the purchase money of said bonds should be deposited in a suitable depositary, to be used only for the purpose of constructing, etc., said line, or any "branch or extension thereof. The property mortgaged was described as “all and singular the line of railroad of the party of the first part, extending from the city of Springfield in the county of *21 Clark, in the state of Ohio, through the counties of Clark, Madison, Fayette, Highland, Pike, Ross, Jackson, Gallia and Lawrence, in said state, to the village of Rockwood in said county of Lawrence, and to all branches, additions and extensions pertaining thereto * " * all materials and other supplies for the constructing, operating, maintaining, repairing or replacing, or for the operating, or improvement of the said railroad or any part thereof, or any part of its equipments or appurtenances. Also all rights, powers, privileges and franchises connected with or relating to the said line of road or the construction and maintenance, operation or improvement thereof, and all other property of every kind or nature pertaining to the said line of railroad whether now held and owned by the said party of the first part or hereafter to be acquired.” It was provided that the liens of the bondholders as between themselves should be equal in priority.
In article 8 of said trust deed it was provided that the party of the first part “covenants and agrees that the entire- proceeds of the sale of bonds secured hereby shall and will be faithfully and exclusively applied to the redemption of the one million dollars of bonds lately issued by the Springfield Southern Railroad Company, to the building, constructing, completing, equipping, extending, renewing, and replacing of the said railroad and branches. * * * And that the said money shall not be appropriated to or used for any other purpose or purposes whatsoever.”
This mortgage was filed for record in Fayette county on the 26th of May, 1881, and it was filed for record in Greene county, June 22, 1894, and in Clinton and Warren counties somewhat earlier, these with Fayette county being the counties in which what *22 was known as the Jeffersonville branch was located. It appears from the record that the railroad company acquired the right of way to the Jeffersonville branch by contract in 1883, and received deeds therefor during the year 1894. The defendants in error furnished materials and did work for the construction of the Jeffersonville branch from March, 1895, to May, 1895, and perfected mechanics’ liens on the Ohio Southern railroad in May, 1895.
It does not appear in the record that any of the money paid for these bonds was actually applied to the construction of thé Jeffersonville branch, nor does it definitely appear that it was not. But although the trustee, The Central Trust Company of New York, and the railroad company may not have applied the money strictly as provided in the trust, yet the holders of bonds purchased in the open market cannot be made to suffer for their delinquency. They should, at least, stand with equal favor before the court along with material men and laborers, so that the money furnished under this mortgage creates as strong an equity, appealing as forcibly to the conscience of the court, as that created by the furnishing of labor and materials.
The question made in this case is whether the mechanics’ liens of the defendants in error are prior to the lien of the mortgage aforesaid upon the after-acquired property of the Ohio Southern Railroad, namely, the Jeffersonville branch. The circuit court seems to have based its conclusion upon a proposition of law stated by Taft, J., in the case of Harris v. The Youngstown Bridge Co., 90 Fed. Rep., 322, to the effect that a mortgage covering after-acquired property attaches only to such interests as the mortgagor has at the time the mortgagor acquires the title thereto. *23 This had been decided in many cases before the one mentioned, and the proposition is not controverted in this case by anyone. It is even conceded that if the defendants in error had, when the company obtained thé title to the Jeffersonville branch, already commenced the performance of a contract on the completion of which he would be entiled to a lien, such lien when duly taken would reach back and prevail over the mortgage. But just here the point of contention arises. When did the railroad company acquire title to the Jeffersonville branch? The circuit court seems to have assumed that the title was not acquired until the construction of the branch was completed, and that the lien of the. defendants in error accrued in the acquisition of the property. If the circuit court had taken the trouble to read carefully the opinion of Taft, J., in the case cited, it probably would not have relied upon that case as authority for the judgment which it rendered. For example this: “It follows that the lien given by the after-acquired property clause of the first mortgage attached to the rights of way in the streets immediately upon the passage of the ordinances, and that improvements upon the rights of way only increased the security by becoming a part of the realty. The lien asserted by Harris, trustee, on this part of the terminals, did not arise in the act of acquisition, but only in the improvement after acquisition. * * * It was the ordinance which passed the title, and not the laying of the tracks by its authority.” Harris v. The Youngstown Bridge Company, 90 Fed. Rep. 332.
We take this to be the law, and applying that principle to the present case, the Ohio Southern Railroad Company acquired the title to the Jeffersonville branch when it acquired its right of way in 1893 and *24 1894. The claims of the defendants in error arose, not in the act of acquisition, but in making the improvements on the property after the acquisition, in the year 1895. If the case stood thus, there could be little doubt that the lien of the first mortgage was prior to the mechanics’ liens. But what effect has the intervention of the statute of 1883, being now section 3208 of the Revised Statutes of Ohio? If the statute be prospectively construed, that is to say, if we construe it as though it should read “shall have precedence over any lien taken or to be taken after ihe passage of this act,” then it is contended that the mechanics’ liens are still prior to the liens under the mortgage, because the right to a mortgage lien on the Jeffersonville branch was not acquired until the title in the Jeffersonville branch was acquired and the mortgage was recorded in the counties through which it runs, that is, in 1894, so that the statute would give priority to those mechanics’ liens over a mortgage thus “taken” after the passage of the act. But the answer to this is that the contractual right of the plaintiffs in error to have a lien under the mortgage, was acquired at, and dated from, the time of its execution in 1881, and simply attached to and became operative upon, the after-acquired property, on the acquisition of the property in 1894. The argument that the mortgage on after-acquired property is operative only as a contract to mortgage and that a new mortgage must be executed in order to acquire a lien in behalf of the bondholders on that property, is untenable and hardly calls for analysis. But whether the instrument of 1881 be a mortgage or a contract for a mortgage, it must be conceded that it conferred a contractual right upon the bondholders to have the first lien on the after-acquired property, *25 and hence, if the statute of 1883 be construed so as to defeat that right, then the statute is retroactive, and impairs the obligation of the contract, and it is so far unconstitutional and void.
We therefore conclude that the court of common pleas and the circuit court were in error in deciding that section 3208 does not violate any contract obligation held under and by virtue of this mortgage; and, in holding that it is not retroactive as to the mortgage of 1881, if it be held that, by force of the statute, the mechanics’ liens of the defendants in error have priority thereto.
The judgment of the court of common pleas and that of the circuit court are reversed and judgment is rendered for the plaintiffs in error.

Reversed.

Shauck, O. J.; Burket and Spear, JJ., concur.
Minshall and Williams, JJ., dissent.